LOTTINGER, Judge.
This is an action for personal injuries alleged to have been sustained by plaintiff while a passenger in an ambulance owned and operated by defendant Twin City Funeral Home, Inc. and insured by the other defendant, Home Indemnity Company. According to the petition, the accident occurred on April 6, 1959, when the ambulance was negligently driven into the rear of a Chevrolet sedan which preceded it, causing plaintiff to be thrown from the cot on which she was lying in the rear of the ambulance.
The Trial Judge concluded that the plaintiff’s “complaints have been of long standing and were not caused by the accident of April 6, 1959”. He accordingly dismissed her suit and she has appealed.
While the findings of the Trial Judge may well be borne out by the record we have concluded that the defendants are not liable for another reason, namely the absence of negligence on the part of the driver of the ambulance.
The record shows that the accident occurred at about 2:30 P.M. on April 6, 1959, on U. S. Highway No. 90 while the ambulance was traveling west. The investigating officer, Huey P. Bourgeois, stated that the accident occurred at one tenth of a mile east of the east limits of Morgan City. He placed the point of collision at a “little left of the center line in the east bound traffic lane”.
The driver of the ambulance, Thomas J. Gast, testified that previous to the accident he and a Mr. Cochran had picked up the plaintiff at her home at Amelia, Louisiana. As they were returning in the direction of Morgan City they came upon a Chevrolet automobile which was proceeding in the same direction with the blinker lights on indicating a left turn. After following the Chevrolet for a distance of some 800 or 900 feet after the blinker light had been turned off, Gast said he sounded his horn and pulled left to pass at which time the Chevrolet turned suddenly to its left in front of him. He stated that he was goinsr straight in the left lane at about 25 or 30 mph at the time of collision. He testified that the right front of the ambulance and *861 left rear of the Chevrolet were damaged. He stated that there was no reason to anticipate the maneuver of the Chevrolet and that there was nothing he could do to avoid the accident.
Floyd Cochran’s testimony corroborated that of Gast. He stated that he was seated in the right front seat of the ambulance after having picked up Mrs. Terrebonne. He described the accident as follows:
“Q. As you got within say eight or ten blocks from where this happened, was there any traffic ahead ?
“A. An automobile Chevrolet was ahead of us.
“Q. Which wai was it going?
“A. In the same direction.
“Q. How fast was Gast- travelling eight or ten blocks before this happened ?
“A. We had come off the viaduct just before, so it would be 25 or 30 miles.
“Q. How fast was the car ahead of you going?
“A. About the same thing because we gained on him some.
“Q. Tell the Court what you noticed from this point until the accident happened ?
“A. I noticed this man Guillory blinking lights in order to make a left turn, the left blinker lights, so then it seemed he decided not to turn and took the light off.
“Q. How far did the ambulance and the Chevrolet travel when the blinker light was blinking showing that he was going to make a left turn ?
“A. 600 to 700 feet.
“Q. Then what happened?
“A. The light went on and we followed him about 1000 feet and decided to pass, and when we got ten or fifteen feet we blew to go around him, and he suddenly decided to turn.
“Q. What located at that point if you remember?
“A. The Tasty Freeze.
“Q. Directly opposite is what?
“A. A service station.
“Q. What is the name of that station?
“A. I believe at that time it was a Phillips 66, but I think it has now been changed.
“Q. What is it now?
“A. It is Esso now.
“Q. Now you say that the ambulance after the signal turn was turned off followed this car — how far ?
“A 1,000 feet, three or four blocks.
“Q. The shoulder of the road on both sides was in what condition ?
“A. Torn up.
“Q. Was there a turning place into the Tasty Freeze?
“A. Yes, there was a small opening there, and a road, but I do not know if it was opened or not.
“Q. Did the driver of the ambulance give a signal before attempting to pass the car?
“A. Yes, he blew his horn.
“Q. Was the siren on?
“A. No.
“Q. As tile ambulance was about to-to pass the car what happened?
“A. We were going into the left lane to go around, and within ten or so-feet from us he decided to turn.”
*862 This witness further stated that the accident occurred in the left lane at about one-third of the distance from the center line. He also testified that he knew of nothing Gast could have done to have prevented the accident.
The driver of the Chevrolet, John Y. Guillory, testified that he did not hear a horn and that he was struck in the right lane going into Morgan City.
We think that the testimony of Officer Bourgeois, Gast and Cochran preponderates over that of Guillory and that the accident occurred as the latter made a sudden and unexpected turn in the passing lane at such time that Gast was powerless to do anything to avoid the accident. Accordingly, the ambulance driver was free from negligence and the plaintiff’s suit must be dismissed.
For the reasons assigned the judgment appealed from is affirmed.
Judgment affirmed.